## Case No. 11,957.

### ROBINSON v. KILBRETH.

[1 Bond, 592.] [1]

Circuit Court, S. D. Ohio. Oct., 1865.

BILL OF EXCHANGE—ACCEPTOR—ACTION BY INDORSER—AGREEMENT—SET-OFF.

1. An accommodation indorser of a bill of exchange, who, after protest for non-payment by the acceptor, pays the bill, has a right of action against such acceptor.

2. In the absence of any proof of an agreement between an acceptor and the indorser of a bill, that in case of default of payment by the maker, the parties shall be liable to each other as sureties, the liability of the acceptor and indorser attaches in the order in which their names appear on the bill, and, in case of payment by the acceptor, being the person primarily liable, he has no right to contribution from the indorser.

3. Where there has been a series of bills drawn by a third party, on some of which the plaintiff was acceptor and on others indorser, and on some of which the defendant was acceptor and on others indorser, and the defendant pays a bill on which he was acceptor and the plaintiff an indorser, both being accommodation parties, the defendant can not set off such payment against the plaintiff's claim for money paid by him on another bill on which the defendant was acceptor and the plaintiff an indorser.

4. Nor can the defendant in such case recover of the plaintiff as indorser for money paid and advanced to the drawer of the bill for plaintiff's use, without proof that the plaintiff was a party to and interested in such an arrangement.

[This was an action by William Robinson against James P. Kilbreth.]

Curwen & Wright, for plaintiff.

Mr. Todd, for defendant.

OPINION OF THE COURT. This suit is brought by the plaintiff as the holder of a bill of exchange for $1,000 drawn by J. B. Guthrie, at Pittsburg, December 30, 1852, at four months, payable to the order of the defendant, and accepted by him. The bill was discounted at the Lafayette Bank of Cincinnati, and not being paid at maturity by the acceptor, was duly protested for non-payment. It was then sent to a bank in Pittsburg for collection, and placed in the hands of the attorney for the bank, for the purpose of enforcing payment against the plaintiff, Robinson, as indorser. He paid the bill without suit, and it was delivered to him. It is not controverted that he is the bona fide holder of the bill for value. It is also a fact in the case that both the plaintiff as the payee and indorser, and the defendant as acceptor, were accommodation parties.

Upon this state of facts, there can be no question that the plaintiff is entitled prima facie to a judgment. The law is well settled on this point. Judge Story, in his treatise on Bills of Exchange (section 253), says: "Indeed, it may be laid down as a general

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

rule, that a bona fide holder for value is entitled to the same rights and remedies against an accommodation acceptor as he is against an acceptor for value, although he knows that it is an accommodation acceptance." And again, in section 269, the author says: "It is wholly immaterial whether the acceptance be an accommodation acceptance or one for value; for in each case, so far as the bill is concerned, the acceptor is the party primarily liable, and all the others stand only as collaterally liable for the payment." The same doctrine is laid down by 1 Pars. Notes & B. 237. He says: "If a bill be indorsed for the accommodation of the drawer, and afterward accepted, the indorser by payment acquires a claim against the acceptor as well as against the drawer, for he is not a surety for the drawer to the acceptor, but for both to the holder." To the same effect is the case of Williams v. Bosson, 11 Ohio, 62, and Kelley v. Few, 18 Ohio, 441.

The defendant, however, as defenses in this action, in addition to the plea of general issue, has given special notice of set-off, based on a bill of exchange for $2,000, of which he alleges he is the holder, and which, as he claims, was paid by him for the benefit of the plaintiff; and also a set-off of $2,000, for so much money paid for the use of the plaintiff. A failure of consideration is also insisted upon by the defendant as a ground of defense. The question of set-off seems to be the only one requiring the consideration of the court. And its solution depends on the facts given in evidence by the parties. The facts as thus exhibited are numerous and somewhat complicated in their character. The outline, as involving the transactions of these parties, may be briefly stated as follows: Some time prior to the year 1851, there was a manufacturing firm at Cincinnati, under the name of James V. Guthrie & Co. John B. Guthrie, the drawer of the bill on which this suit is brought, was the brother of J. V. Guthrie, and lived at Pittsburg. John B. Guthrie had intended to become a partner in the firm of J. V. Guthrie & Co., but subsequently abandoned such purpose. The firm of J. V. Guthrie & Co. lacked the necessary capital to carry on their business, and was obliged to resort to bank accommodations to enable them to do so. To effect their object, at the special request of John B. Guthrie and for his accommodation, the plaintiff, Robinson, a man of large means and undoubted credit, living at Allegheny City, agreed to lend the use of his name to raise money for said firm. The usual course was for John B. Guthrie to draw on James V. Guthrie & Co., to the order of Robinson, who indorsed the bills; and, at maturity, they were taken up by the proceeds of his acceptances, which were usually discounted by banks at Cincinnati. Some time in the year 1851, the firm of J. V. Guthrie & Co. failed, and their credit was so far impaired

that the Cincinnati banks refused further to discount their paper. To save them from protest, John B. Guthrie, through his brother, William Guthrie, requested the defendant Kilbreth to lend the use of his name in the place of J. V. Guthrie & Co. To this, Kilbreth assented, saying at the time to William Guthrie, that it must be understood that he was to incur no liability thereby. This condition was made known to John B. Guthrie, but never to the plaintiff. Nor does it appear that the plaintiff requested Kilbreth to go on the paper, or had at the time any knowledge of the arrangement between him and John B. Guthrie. At the time Kilbreth agreed to lend the use of his name, the bills of J. V. Guthrie & Co., outstanding and unpaid, amounted to $4,600. On all this paper, John B. Guthrie was the drawer and the plaintiff either indorser or acceptor. This sum was in bills of different amounts, and had been discounted at different banks. Pursuant to the arrangement with the defendant, as these bills matured they were paid by the proceeds of other bills drawn by John B. Guthrie, each bill having the name of plaintiff or defendant either as acceptor or indorser. These bills were finally reduced to and consolidated in two bills. One for $2,500, dated August 27, 1852, drawn by the defendant, at four months, to the order of Kilbreth & De Camp, on the plaintiff Robinson, accepted by him, and indorsed by Kilbreth and De Camp. This bill was discounted at the Bank of Lawrenceburg, on the application of Kilbreth, and the proceeds were applied to take up paper at other banks on which Robinson was acceptor. This is the foundation, as I understand the argument of the counsel of the defendant, on which he claims a set-off against the plaintiff for money paid for his use.

The other bill set up in support of the set-off is a bill for $2,000, dated August 28, 1852, drawn by Kilbreth, at four months, to the order of Kilbreth & De Camp, accepted by the plaintiff, and indorsed by said firm. This bill is now in the possession of Kilbreth, and it is insisted by his counsel that it is a legal set-off to the claim of Robinson on the $1,000 bill sued on, and that he is entitled to a judgment after deducting the amount of said bill.

As to the $2,500 bill referred to, the facts seem to be that it was sent by the Lawrenceburg Bank to the Bank of Pittsburg for collection; and at maturity was paid by John B. Guthrie at that bank by the proceeds of a bill for $1,500, drawn by him, indorsed by Robinson, and accepted by Kilbreth. This bill was discounted by Patrick & Fields, bankers at Pittsburg, and the proof is clear that it was paid some time after maturity by the drawee, John B. Guthrie. The other part of the $2,500 bill was paid by the proceeds of a bill for $1,000, drawn by Guthrie to the order of Robinson, indorsed by him, and accepted by Kilbreth. This is the bill on which this suit is brought. As already stated, it was discounted at the Lafayette Bank of Cincinnati, protested for non-payment by the acceptor, paid by Robinson as indorser, and is now held by him. The $2,500 draft having thus been paid and extinguished by Guthrie and Robinson, I can not perceive any ground on which the defendant's claim of set-off, based on this transaction, is sustainable. And so far as this suit is concerned, it may be left wholly out of view.

The only controversy in this case arises on the $2,000 bill of August 28, 1852. This bill, as before noticed, was accepted by Robinson at the request and for the accommodation of John B. Guthrie. He sent the bill to Kilbreth, who indorsed it and procured its discount at the trust company at Cincinnati, on the day of its date, and received the proceeds. It was sent by the trust company to the Exchange Bank of Pittsburg for collection, and paid by Guthrie at or soon after maturity. The evidence that it was thus paid is incontrovertible. Guthrie testifies that he so paid it, and took up the bill and exhibited it to Robinson to satisfy him that he was discharged from liability. The fact of payment also clearly appears by the entries in the books of the bank, which are in evidence.

The defendant, however, claims that Guthrie paid the $2,000 bill of the 28th of August, by the proceeds of another bill for the same amount, dated December 1, 1852, drawn by Guthrie on Kilbreth to the order of Robinson, indorsed by him, and accepted by Kilbreth. This bill was negotiated at a bank in Cincinnati, and, as Kilbreth testifies, was paid by him at maturity. And it is insisted by his counsel, in a most elaborate written argument, that as the proceeds of the bill paid by Kilbreth were applied to take up the bill on which Robinson was liable as acceptor, such payment is a valid set-off to the plaintiff's claim in this suit, as so much money paid for the use of the plaintiff. This presents in the view of the court, the only question involving any doubt in this case. After a careful consideration of the points made in the argument of the defendant's counsel, I am unable to concur in his conclusions. The solution of the questions involved depends upon the position which the parties occupied on the paper referred to and the legal liabilities arising from it. Now, the rule of law is well settled by the authorities already cited, that all the parties upon accommodation paper, except the party accommodated, are to be treated as parties to business paper, and subject to the strict principles of commercial law applying to such paper; and that where there is no express agreement to the contrary, the legal conclusion is that each party stands in the relation to the others as on business paper. The acceptor on such paper is always liable to the other parties. The cases in 11 and 18 Ohio Reports before referred to, as well as the

elementary writers cited, clearly sustain this position. The fallacy in the extended argument of the defendant's counsel arises, as I think, from his assumption, that as between these parties there was an understanding, express or implied, that they were to stand in the relation of sureties for each other, and in the event of any loss each was to be liable to contribution. But the evidence does not sustain this view. It is true the defendant Kilbreth stated, when he lent his name for the accommodation of J. V. Guthrie & Co., that it must be understood he was to incur no responsibility thereby. It is not necessary to decide whether a party can limit his legal liability by such a declaration, for it is in evidence in this case that the plaintiff was never informed that the defendant had annexed such a condition in putting his name on the paper. The plaintiff can not be presumed, therefore, to have been affected in his action by such condition. The inference fairly deducible from all the facts is, that both the plaintiff and defendant had entire confidence in the ability of John B. Guthrie to protect them from ultimate liability; and with this impression, became parties on the paper. The plaintiff, in the strictest sense, was on the paper as either an accommodation indorser or acceptor for John B. Guthrie. He had no interest in the transactions in which the paper originated; he was not indebted to either of the Guthries, nor did he receive any remuneration for the use of his name on their paper. There was no request from him to Kilbreth that his name should be used, or any correspondence or communication between them on the subject. He might well have inferred, knowing the fact that Kilbreth was the brother-in-law of the Guthries, that his motive was to do them a favor, and in doing so was willing to incur the risk which he assumed by going on their paper. But without pursuing this view further, I am clear that there is nothing developed by the evidence, which, either expressly or by fair implication, justifies the conclusion that there was any agreement or understanding between these parties exempting them from the application of the settled principles of commercial law in determining their rights and liabilities.

There can be no question that the payment of the $2,000 bill of the 28th of August, as before stated, by John B. Guthrie, in behalf of Robinson, the acceptor, was to all intents and purposes an extinguishment of that bill. It became by such payment functum officii, and could not be enforced against any of the parties. 2 Pars. Notes & B. 216, 219; Byles, Bills, 193, 323. And I do not see on what ground the defendant can assert any rights as the holder of the bill. It is clear he could not sue Robinson as acceptor, and equally clear he can not set it up as a set-off in this suit. It was delivered by the collecting bank to John B. Guthrie as a paid bill. Guthrie could not transfer it to Kilbreth, and he swears he did not either transfer or deliver it to him.

After payment he put it among his papers, and does not know how or when it came into the possession of Kilbreth. Kilbreth says he obtained it from William Guthrie, since deceased, but under what circumstances does not appear. He is not, therefore, the bona fide holder of the bill, and can assert no rights under it.

That Guthrie paid the bill with the proceeds of another bill discounted on the credit of the parties, does not, as it seems to the court, affect in any way the question under consideration. That was a matter distinct from, and independent of, the prior bill paid by Guthrie. It was not paid by a renewal of the same bill at the same bank, but by the negotiation of a new bill at a different bank. The proceeds of the new bill was the money of John B. Guthrie, the payee, and he had a right to apply it according to his own pleasure. Guthrie swears that he raised the money, and paid the bill, which, as before remarked, put an end to its vitality as a negotiable instrument. But it is insisted by defendant's counsel that if he has not a right of set-off, under the bill of August 28, 1852, his claim for money paid for the use of the plaintiff, in taking up the $2,000 bill of the 1st of December is sustained. John B. Guthrie was the drawer of this latter bill; Kilbreth, the acceptor, and the plaintiff, an indorser. Guthrie negotiated it at a bank in Pittsburg; it was transmitted to the trust company, at Cincinnati, for collection, and there paid by Kilbreth as acceptor. He accepted the bill at the request and for the accommodation of Guthrie. As acceptor, he was bound to pay the bill at maturity, and in doing so, merely discharged a plain legal obligation. I can not perceive on what principle, under these circumstances, the law can imply a request by Robinson which subjected him to a liability to indemnify Kilbreth. They did not occupy the position of joint sureties, but each was independently liable in the order in which their names appeared on the bill. If Kilbreth had refused payment as acceptor, and the bill had been protested for non-payment, and afterward paid by Robinson as indorser, the authorities before referred to are clear to the effect that the indorser could sue the acceptor, and recover the whole sum so paid. If such is the law, it negatives the right of the defendant in this suit to recover on his claim of set-off, for money paid. 1 Pars. Notes & B. 327.

It is not material to decide whether Kilbreth has a right, as against Guthrie, to recover the sum paid. As the drawer of the bill, at whose request and for whose accommodation he accepted, there can be no doubt Kilbreth has a remedy as against Guthrie. The cases and authorities cited before seem clearly to sustain this position. And such being the law, it results by fair implication that Kilbreth has no claim as against Robinson, the indorser. In his work on Bills of Exchange, on the subject of the liabilities of an acceptor, Judge Story says, upon payment of

the bill, he has no right of recourse against any of the prior parties, unless he is an accommodation acceptor on their account, and at their request. Section 263. The same principle is distinctly stated in section 410. In this case, as there is no pretense that Kilbreth accepted the bill at the request and for the accommodation of Robinson, the doctrine above stated has a direct application.

In conclusion, as in my judgment, there are no facts in this case withdrawing the question of the rights and liabilities of the parties, from the operation of the strict principles of commercial law as applicable to negotiable paper, I am led to the result that the plaintiff is entitled to recover on the $1,000 bill paid by him, with interest from the date of the payment.